# In the
# United States Court of Appeals
## For the Second Circuit

————

August Term, 2014

No. 11-4276-cv

AIDAN A. SMITH,
*Plaintiff-Appellant*,

v.

MICHAEL HOGAN, President of the University of Connecticut, PHILIP AUSTIN, Interim President of the University of Connecticut, THE BOARD OF TRUSTEES FOR THE UNIVERSITY OF CONNECTICUT, C. DENNIS PIERCE, Director of Dining Hall Services for the University of Connecticut, Hearing Officer, VALICIA D. HARMON, DANA R. MCGEE, Director of the Office of Diversity and Equity, UNIVERSITY OF CONNECTICUT, and STATE OF CONNECTICUT,[1]
*Defendants-Appellees*.

————

Appeal from the United States District Court
for the District of Connecticut.
No. 3:10-cv-1025 (JBA) — Janet Bond Arterton, *Judge*.

————

Submitted: April 21, 2015
Decided: July 22, 2015

————

---

[1] The Clerk of Court is directed to amend the caption as set forth above.

No. 11-4276-cv

Before: KEARSE, PARKER, AND WESLEY, *Circuit Judges*.

―――――

Plaintiff-appellant Aidan A. Smith appeals from a judgment of the United States District Court for the District of Connecticut (Arterton, *J.*) granting defendants' motion to dismiss his complaint for lack of standing and for failure to state a claim upon which relief could be granted, and denying leave to amend. **AFFIRMED.**

―――――

> ARTHUR A. SMITH, Hartford, CT, *for Plaintiff-Appellant Aidan A. Smith*.
>
> PHILIP MILLER, Assistant Attorney General, for George Jepsen, Attorney General for the State of Connecticut, Hartford, CT, *for Defendants-Appellees*.

―――――

BARRINGTON D. PARKER, *Circuit Judge*:

## BACKGROUND

Plaintiff-appellant Aidan A. Smith appeals from a judgment of the United States District Court for the District of Connecticut (Arterton, *J.*) dismissing his complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Because we conclude that an affidavit attached as an exhibit to a complaint is not a "written instrument" that is deemed part of the complaint pursuant to Rule 10(c), we affirm the district court's dismissal of Smith's wrongful termination claims brought under the Americans with Disabilities Act and the Rehabilitation Act. We also affirm the district court's dismissal of Smith's remaining claims for lack of standing and for failure to state a claim upon which relief can be

granted. Finally, we affirm the district court's denial of Smith's motion for leave to amend his complaint, a motion which was first made following the entry of the final judgment.

Because this appeal arises from the district court's dismissal of Smith's complaint, the following facts are drawn from the Amended Complaint and accepted as true. Over a period of time, Smith has suffered from a series of medical problems including bronchitis, bipolar disorder, a learning disability, attention deficit disorder, and post-traumatic stress disorder. While in high school, Smith began to work for the University of Connecticut (the "University") in its Dining Hall Services as a student employee and continued to work there after enrolling at a local community college in 2009.

On September 14, 2009, Smith began to "feel[] ill while [working] on the food line." JA 323. A supervisor told Smith to get a face mask, but because Smith "feared his bronchitis was re-occurring," he did not return to the food line. *Id.* Smith alleges that his treating physician told him that it was "likely to have been bronchitis" that made him feel ill on that day. JA 324. Smith asserts that under Connecticut Public Health Code section 19-13-B42(r), he was prohibited from returning to the food serving line with bronchitis. *See id.* Further, because of the ongoing H1N1 ("swine flu") epidemic at the time of this incident, the University had "posted signs in dining halls that employees did not need doctor's excuses if feeling too ill to work." *Id.* Nevertheless, the University terminated Smith's employment because he left a food serving shift without a supervisor's permission, an immediately terminable offense under applicable University regulations.

Smith unsuccessfully challenged his discharge through the University's internal grievance procedures. Following these

proceedings, Smith's father, an attorney who represents him on this appeal, contacted the University and made requests pursuant to the Connecticut Freedom of Information ("CTFOI") Act seeking various documents. Specifically, Smith's father requested "information related to [the] University of Connecticut Dining Hall Services['] policy or pro-active H1N1 procedures," and a CTFOI Commission hearing "to challenge the University's failure to comply with the CTFOI Act." JA 329. Prior to the hearing, Smith's father served subpoenas on several University officials and employees, including the University's president, its dining services director, and its attorney. According to Smith, the University's attorney made ex parte contact with the CTFOI hearing officer, and requested a motion to quash the subpoenas and a protective order to preclude additional subpoenas, both of which were granted.

In March 2010, Smith filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and the United States Equal Employment Opportunity Commission ("EEOC"). In August 2010, the CHRO issued a Merit Assessment Review, concluding that Smith had stated a valid claim for relief. The CHRO also issued a Release of Jurisdiction and the EEOC issued its Notice of Right to Sue.

Smith subsequently filed this lawsuit, bringing claims against (1) the University and its officers for discriminatory discharge under the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, (2) CTFOI hearing officer Valicia D. Harmon for violating his father's First Amendment rights by granting the University's motion

to quash and motion for a protective order, and (3) all defendants for depriving him of his substantive due process rights.[2]

The defendants moved to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6). In September 2011, the district court granted defendants' motion to dismiss. As relevant to this appeal, the court held that (1) Smith's ADA and Rehabilitation Act claims failed because bronchitis is not a qualifying disability under either statute, and Smith's alternate theory of discrimination based on an alleged anxiety disorder was not pled in the Amended Complaint, (2) Smith lacked standing to raise a First Amendment claim on behalf of his father, and (3) Smith's substantive due process claim failed because the "right" to comply with state health codes does not warrant protection under the substantive due process clauses of either the Fifth or the Fourteenth Amendments. After dismissing the federal claims, the district court declined to exercise supplemental jurisdiction over Smith's remaining state law claims, and entered judgment in defendants' favor. *See Smith v. Hogan*, No. 3:10-cv-1025, 2011 WL 4433879 (D. Conn. Sept. 22, 2011).

In October 2011, Smith filed his notice of appeal in this Court and two motions in the district court – one for reconsideration and one to alter or amend the judgment. The district court treated the two motions as a single motion for reconsideration. In November 2011, Smith moved to amend the complaint. This Court stayed Smith's appeal pending the district court's ruling on the various motions.

---

[1] Smith also raised Fourth and Fifth Amendment claims against the University's Office of Diversity and Equity and its director, Dana R. McGee, in connection with its independent investigation of Smith's allegations. Because Smith does not discuss the district court's dismissal of these claims in his brief, he has waived them on appeal. *See Lore v. City of Syracuse*, 670 F.3d 127, 149 (2d Cir. 2012).

Ultimately, the district court denied Smith's motion for reconsideration for largely the same reasons set forth in its original decision. *See Smith v. Hogan*, No. 3:10-cv-1025, 2014 WL 5460716 (D. Conn. Oct. 27, 2014). Shortly thereafter, the district court denied Smith's motion for leave to amend, "[c]onstruing [it] as a second motion for reconsideration (in light of the procedural posture of the case)." JA 316.[3] This Court subsequently lifted the stay on Smith's appeal.

## STANDARD OF REVIEW

This Court reviews de novo a district court's dismissal for failure to state a claim, *see Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012), or for lack of subject matter jurisdiction, *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). While ordinarily, "[w]e review denial of leave to amend under an 'abuse of discretion' standard[,] [w]hen the denial of leave to amend is based on a legal interpretation, such as a determination that amendment would be futile, a reviewing court conducts a de novo review." *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 490 (2d Cir. 2011) (citation omitted). A district court's denial of a motion for reconsideration is reviewed for abuse of discretion. *See RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 316 (2d Cir. 2003).

---

[2] "A party seeking to file an amended complaint post[-]judgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). Accordingly, the district court appropriately construed the motion to amend the complaint as a second motion for reconsideration of its ruling on the motion to dismiss.

No. 11-4276-cv

## DISCUSSION

I.     ADA and Rehabilitation Act Claims

In order to establish a prima facie case of employment discrimination under the ADA or the Rehabilitation Act, a plaintiff must adequately plead that he was terminated because of a qualifying disability. *See, e.g.*, *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) (ADA); *Doe v. Pfrommer*, 148 F.3d 73, 82 (2d Cir. 1998) (Rehabilitation Act). The only theory of wrongful termination pled in Smith's complaint is that he "was terminated . . . because he left a food serving shift without prior supervisory permission while ill." JA 323. The only basis for feeling ill that Smith references in his complaint is that he thought he had bronchitis. Further, he believed that he did not need a supervisor's permission to leave when he was feeling sick because he had a right to do so pursuant to Connecticut's Health Code. *See* JA 323-24. However, Smith conceded at oral argument before the district court that bronchitis is not a qualifying disability under either the ADA or the Rehabilitation Act, and he has not attempted to re-litigate the issue on this appeal.

Instead, Smith argued in opposition to defendants' motion to dismiss and again on this appeal that he was terminated because of his anxiety resulting from being asked to work on the salad line. *See, e.g.*, Smith Br. 28 (describing Smith's "disabling condition[]" as being "anxious about making wraps"). However, the complaint includes no allegations that the University knew, or should have known, that Smith's purported anxiety disorder was triggered by being asked to make salads. More critically, the complaint includes no allegations that Smith's illness on September 14, 2009 was even caused by anxiety. Accordingly, the only legal theory articulated in Smith's

complaint is that he was terminated because of his bronchitis, or the University's failure to accommodate his bronchitis.

Smith contends that his complaint adequately pleads an anxiety-based wrongful termination claim because it attaches an October 9, 2009 affidavit that Smith submitted in connection with the University grievance proceeding. The affidavit, which is part of 170 pages of exhibits attached to the complaint, is Smith's four-page summary of his work history at the University and of the events that occurred in the cafeteria on September 14. Specifically, he alleges that working on the salad line was "a high anxiety performance task" because he "had little training at that task," that he asked to be reassigned to another task, and that after the request was denied, he began to feel sick to his stomach. JA 8.

The district court declined to consider the allegations in the affidavit for two separate reasons: (1) the affidavit was not a "written instrument" as contemplated by Rule 10(c) and thus, not properly considered as part of the complaint, and (2) the affidavit contains a legal theory–discrimination on the basis of anxiety while serving food–that does not appear on the face of the complaint. *See Smith*, 2011 WL 4433879, at *4-5. Accordingly, the district court dismissed Smith's ADA and Rehabilitation Act claims. Because we agree that the affidavit is not a "written instrument" for purposes of Rule 10(c), or otherwise properly considered to be part of the complaint on a motion to dismiss, we affirm the district court's dismissal of these claims.

Rule 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Defendants contend that a plaintiff's affidavit is not a "written instrument" because it is not a document evidencing legal rights or

duties or giving formal expression to a legal act or agreement, such as a deed, will, bond, lease, insurance policy or security agreement. *See* Def. Br. 22-23. We agree.

While this Court has not previously ruled on the extent to which Rule 10(c) applies to a plaintiff's affidavit attached to pleadings, two of our sister courts have. In *Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3d Cir. 1989), the Third Circuit held that affidavits are not written instruments, noting that "the types of exhibits incorporated within the pleadings by Rule 10(c) consist largely of documentary evidence, specifically, contracts, notes, and other writing[s] on which [a party's] action or defense is based." (internal quotation marks omitted). The Seventh Circuit held to the contrary in *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 453 & n.4 (7th Cir. 1998), concluding without explanation that affidavits and exhibits attached to a complaint are "written instruments" under Rule 10(c). *Accord Schnell v. City of Chicago*, 407 F.2d 1084, 1085 (7th Cir. 1969), *overruled on other grounds by City of Kenosha v. Bruno*, 412 U.S. 507, 512-13 (1973) ("[A]ffidavits and exhibits attached to the complaint are a part thereof for all purposes.").

We find the Third Circuit's holding to be more persuasive and align ourselves with that holding because it is consistent with the general understanding of what a legal or a written instrument is, *i.e.*, a "legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate[,]" Black's Law Dictionary (10th ed. 2014). The affidavit proffered by Smith, a personal, narrative summary of his experiences working in the cafeteria and of the events that occurred on the day he was discharged, bears no resemblance to instruments

such as contracts, registration statements, deeds or indentures. It is not a document that evidences legal rights or duties or sets forth the legal basis for his claims and therefore does not satisfy the definition of "written instrument."

To be sure, this Court has permitted the consideration of other documents, apart from written instruments under Rule 10(c), at the motion to dismiss stage, such as "documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 179 (2d Cir. 2014) (internal quotation marks omitted), including filings with the Securities and Exchange Commission or a prospectus, *see Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991). Further, we have explained that a court may consider an "integral" document where the complaint "relies heavily upon its terms and effect[.]" *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995). Smith's affidavit, a writing of his own creation that post-dates his termination, is not a part of his complaint even under these standards. In contrast to a public filing or a prospectus, the assertions in the affidavit have no independent legal significance to Smith's claim. The affidavit is not a document that he relied upon in bringing his wrongful termination claim, nor is it a document that is integral to the complaint as it is never even mentioned there.

Finally, treating the affidavit as part of the complaint would do considerable damage to Rule 8(a)'s notice requirement. The affidavit, buried in 170 pages of exhibits, contains novel factual allegations and purports to support a legal theory that appears nowhere on the face of the Amended Complaint. If such an affidavit could be deemed part of a complaint, then Rule 8(a)'s requirement of

a short and plain statement of a claim for which relief could be granted would be eviscerated. The exercise of determining exactly what combination of documents constitutes the complaint and what the complaint plausibly alleges would become a needlessly complicated adventure for both defendants and courts. Even more troubling, adopting Smith's position would severely compromise the ability of defendants and courts to test the legal viability of complaints at the pleading stage, a right that is integral to federal procedure.

**II.     First Amendment Claim**

Smith brought a First Amendment claim against hearing officer Harmon on behalf of his father for improperly quashing the subpoenas that his father served on various University officers and employees.

Typically, a plaintiff who asserts the claims of a third party can obtain standing by establishing "(1) a close relationship to the injured party and (2) a barrier to the injured party's ability to assert its own interests." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 109 (2d Cir. 2008). The district court dismissed this claim, holding that because Smith "is unable to demonstrate a barrier to his father's ability to assert his own First Amendment rights[,]" he does not have standing to bring a First Amendment claim on his father's behalf. *Smith*, 2011 WL 4433879, at *5.

On appeal, Smith argues that if his father were to bring a claim on his own behalf, his interests "may come into conflict" with his son's litigation position. Smith Br. 23. This conclusory assertion is not supported by any identification of the purported inconsistency between the two litigation positions. Nor does Smith offer an

explanation as to why his father could not have continued to pursue the FOI issues in his own capacity while representing him in this lawsuit.

In the alternative, Smith contends that he has standing to bring a First Amendment claim as a facial challenge to an overbroad "practice or enactment." *Id.* at 24. But Smith does not challenge any statute, regulation, or practice as facially overbroad. Rather, his First Amendment claim arises from the hearing officer's specific ruling on the University's motions to quash the subpoenas. Accordingly, we affirm the district court's dismissal of this claim.

### III. Substantive Due Process Claim

Smith contends that the University deprived him of his "substantive due process liberty right to comply with state health codes." *Id.* at 26. This contention has no merit. Substantive due process protections extend only to those interests that are "implicit in the concept of ordered liberty," *Palko v. Connecticut*, 302 U.S. 319, 325 (1937), which are rights "so rooted in the traditions and conscience of our people as to be ranked as fundamental," *Reno v. Flores*, 507 U.S. 292, 303 (1993) (internal quotation marks omitted). Smith argues that "[c]ompliance with health laws for the student employee, the lesson of learning to have regard for the well being of others, as well as for the economic benefit for oneself, is such a privilege that is essential to the orderly pursuit of happiness." Smith Br. 27. We agree with the district court that "[c]omplying with health codes" is not an interest that is "fundamental and deeply rooted . . . comparable to the right to marry, the right to have and raise children, or the right to bodily integrity," *Smith*, 2011 WL 4433879, at *8. Consequently, we affirm its dismissal of Smith's substantive due process claim.

## IV. District Court's Ruling on Smith's Motion for Leave to Amend

Finally, Smith argues that the district court erred in refusing "to grant leave to replead after a motion to dismiss, without justification for the futility of plaintiff's" claims. Smith Br. 15; *see also id.* at 21-22. Because Smith's motion for leave to amend was filed after entry of final judgment, the district court construed Smith's motion for leave to amend as a second motion for reconsideration. The district court denied Smith's motion, noting that it "raises substantially the same arguments raised in [his] first motion for reconsideration, [which were] already considered and denied by this Court." JA 316.

As previously noted, Smith sought leave to replead only after judgment had been entered. Because he did not succeed in having the judgment vacated, he was not entitled to replead at this stage of the case. *See Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 244-45 (2d Cir. 1991) (explaining that Rule 15(a)'s liberal amendment policy should not "be employed in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation" (internal quotation marks omitted)).

## CONCLUSION

For these reasons, we AFFIRM the judgment of the district court.